Your honors, may it please the court. Chief Judge Stewart, Judge Jones, Judge Higginson, my name is Byron Henry, and I represent the appellants in this case, which I will collectively refer to as Symmetra. I'm not going to belabor a lot of factual history, but it is nice to know where we are vis-a-vis where we began in this case. This case is eight-plus years of litigation and over hundreds of pages written by the district court, and I must say it pains me a bit to be here arguing about Judge Rosenthal's final opinion as she has done yeoman's work in this case. As an appellant lawyer and hopefully as appellant judges, we love the cases that start with the world of the law and are narrowed to a very fine point, a legal point, that we're allowed to decide without wading too much through hundreds of pages of records and depositions and factual arguments. Here we have Symmetra has a single issue on appeal, and that is whether or not it was entitled to recover its attorney's fees incurred in the federal case as a result of RAPID's failure to comply with the Structured Settlement Protection Acts. The applicable acts here, Texas and Washington, I'm going to refer to them interchangeably simply as the act unless there's a specific question about one of the state's acts because the two acts at issue in this case are virtually indistinguishable, identical for the purposes of what we're speaking about today except for the code numbers. Judge Rosenthal, after her work determining that the arbitrations used by RAPID to effectuate transfers under the act constituted a transfer and in fact violated the act, there was a preliminary injunction to that effect, a permanent injunction to that effect. That permanent injunction was appealed to this court. This court affirmed the permanent injunction. Subsequently, there was a declaratory judgment issued with respect to that. So where we are today is we know that an arbitration constitutes a transfer even if it's attempted, even if it's not approved. We also know that it violates the applicable act. The dispute here is when we came to federal court to challenge RAPID's use of arbitration with respect to certain payees or annuitants, as I referred to them in the brief, whether or not the act covers our fees incurred in this case. I believe the district court missed it on this one issue and I believe it was born of a little bit of confusion because of the two-step nature of this process. First of all, all of the applicable acts require a party to go to state court to get these transfers approved. That's what I referred to in my brief as the state court transfer proceeding. In all of the cases involved that we're talking about here today, every one of the court rejected the state court transfer. We know that RAPID went to court and they were rejected except for one. There's no record, there's no evidence in the record about the heirs transfer. What we have is going to state court, losing, case closed, there's no transfer. RAPID does have a contract with these individuals, they believe, that includes an arbitration provision. If there's an alleged breach of this provision, even if it's in an agreement that was not approved by court, they run off to arbitration in Houston using the same arbitrator, get an arbitration award saying you violated the contract, you owe us your annuity payments, and in the arbitration award they get an order telling Symetra we have to pay it to RAPID instead of to the annuitant. Courts, all the courts that have addressed it, including this one spot on, have said that is against the act, it's against the law, you cannot indirectly through arbitration do what you cannot do directly in the state court proceeding. So that's not even on appeal here today. But what happened is they take these arbitration awards post state court transfer proceeding and they attempt to enforce them either directly on Symetra or they go. I'm just wondering, under what factual circumstances was your litigation in federal court within that provision? Because Judge Rosenthal found that the federal court action was not following a transfer, right? That's the precise finding that she made. And I might disagree with that, but I have to say that it sounded to me as if your client never really figured out what they were going after in regard to fees. It seems to me, this is just my theory of it, you withdrew your claim for fees for litigating in state court, you came into federal court and apparently argued primarily that you wanted fees because your purpose of your litigation was to change the business practices of RAPID, which again is quoted in Judge Rosenthal's opinion. And then finally, after this colloquy, she lets you amend the motion for attorney's fees to say, oh no, there are these ten claimants that we're going after. So which is it? That's correct, Judge Jones. When the case started, Symetra attempted to recover all of its prior fees under the equitable exception under Texas law that this court has recognized in DP Solutions because RAPID was interfering with the contracts of Symetra in all these different courts and all these different places. So we attempted to use, in the first motion, to get all the fees as damages for tortious interference. That's clear from the record. The colloquy that you discuss, and you're spot on with respect to what happened, is the court said, well, I've got a couple problems with that. One, you've never really mentioned any other ones except for gross, the gross matter that I believe RAPID's appealing. So I have a problem with you adding all these other ones in for tortious interference. Secondly, she expressed concern, and I think it might have been well taken, that if you incurred fees in a state court proceeding in which fees are available and choose not to seek them, you may have a claim preclusion issue. So as a result of that, there's a long opinion where RAPID objects to the amendment and Judge Webersmithall extends us the courtesy of amending our pleading, and then we amend our pleadings and our motion for summary judgment to disavow any fees incurred in state court litigation. Regardless of whether they were incurred or not, or could have been recovered or not, we simply said we're not going to request any fees incurred in state court cases. Secondly, it's clear from the June 6th hearing, and that's in the record, the result of that hearing is that the only case in which we are seeking and were awarded fees for that matter, under the equitable exception under Texas law, is the gross Niemeyer dispute that arose up in Indiana, that we were drawn into by virtue of the contempt motion. So that's what it now, but the final decision, it was clear that we were seeking our fees for this litigation based on having to come to court for two purposes, preliminarily enjoining and invalidating. Subsequent, the reason I was going a little bit more background is because Judge Rosenthal a little bit conflates the issues and says, well, you were already in state court. By disavowing your state court fees, you're disavowing your fees with respect to those annuitants. And there's a gap in her opinion where she stops at one point and says that, and then she moves on to, in the alternative, we go for tortious interference, and we waive that argument, as you can see in her opinion. But what is not there, and I attempted to point this out in my Rule 59e motion is, is that Symetra didn't stop at the state, excuse me, RAPID didn't stop at the state court proceeding. After that was over, they went and filed arbitrations, got judgments, and we had to come to federal court to stop those arbitration transfers. But my question regarding that, well, I have two questions. One is, I'm very concerned that you didn't segregate your fees, which is only a paragraph in her opinion, but it's a significant issue. And I'm also concerned that you used these eight or nine annuitants as examples of the global relief that you were seeking and ultimately achieved. And therefore, it seems to me that the amount of attorneys fee, the maximum amount you'd be able to get, because I sort of agree with you on the following, the transfer deal, is for each of those individuals and not for the protracted eight years' worth of litigation. I'll attempt to answer both of those, Judge Jones. First, on the segregation issue. The reason all of our fees were in the record in both motions is because there was the remnant of the tortious interference argument. As damages, you have to put in your attorney's fees as damages when you move for summary judgment. If you're simply seeking your fees in this case as fees, there's no need for us to do anything but prove we expended some fee, a dollar, and then we do a Rule 54 motion afterwards saying here's the fees we get as a result of the court's decision. Here the court said we get no fees for this case, period. So there would be no reason for me to take the initiative with the client and dissect all of the fees for the individual. But she had specifically given you the opportunity to file the request for fees. I don't think Rule 54 has any bearing on this. She gave you that opportunity, and you came back seeking the whole $900,000. Isn't that right? You have to show you incurred some fees before you can even proceed to Rule 54. And under Texas law, just as a side note, segregation is not a merits issue. It's a reversal issue. Even if you go up to the court and you find that segregation was improper, if there's evidence of any fees, you reverse and have it resegregated and reordered. In other words, you don't lose all your fees at the appellate court because you didn't segregate properly. That's a retried issue. But one other thing is the reason we segregated the second time, and you'll see this in the supplemental affidavit of Jeff Lefkowitz, is there was an issue at that August hearing about whether or not you have to segregate by state. Do you have to segregate by payee as to which act applies? So we went back and resegregated our fees. The purpose of the attorney's fees affidavit prior to judgment is to show that you incurred recoverable fees. The amount of fees you recover, at least not in my experience. I have not proven those up in federal court in my career by testimony or by affidavit prior to judgment. I'm not saying it cannot be done. I think 54 may be permissive. But it's always done once the court determines you're entitled to fees. You submit your motion, and there's a time limit, and you submit your motion and the exact amount to which you are entitled. And if there's a segregation problem, then the court would obviously award you the amount that she knows you incurred. And I'll just use an example. Why would we be piecemealing at this point in time? Because you've already got your judgment on the merits. So you're basically in the post-judgment stage, right, when it comes to attorney's fees? Yes, Your Honor. Why is that any different from Rule 54? Because the court said in her summary judgment opinion that it was made final by the final judgment. You get no fees at all. As a matter of law, you're not entitled to fees under the Act in this case. But that was after you had tried three times to erect a theory of fees, right? Yes, Your Honor. With the court's leave, the theory of fees did change, no doubt. But the fact is once we settled on fees for the federal case, we weren't required to prove up anything except that we incurred some fees at all that were recoverable. The court said we didn't prove up any fees that are recoverable because you don't get fees under this statute. And that leads me to the second question you had, and that is about the global relief. It's a little bit of a mischaracterization to say that we use these as examples. One case that came up to this court, the Gross case, I'll just use that one as an example of demonstrating we were entitled to fees. Gross actually came to this court to confirm an arbitration award in the district court, and then that was appealed here, meaning that was a specific case. And that's just one example. I could go through the record and show how they were attempting to enforce arbitration awards against Symetra in ten specific cases, one of which subsequently settled, leaving nine. So they might have been great examples, but that doesn't change the fact that we needed a preliminary injunction before we got some global relief based on past conduct to stop their conduct with respect to ten specific payees, which they were at different stages of the procedure. For some payees, they had gotten the arbitration award, and they were trying to confirm. Some, they had confirmed the arbitration award. In a court, the time to challenge those directly had passed. So they're sitting out there with state court judgments in violation of the act to enforce. Our only remedy there is to go to some court to invalidate it, whether it's state or federal, and we came to the federal court. Looking at those ten, there were some that, am I correct, that there were some that you'd settled in state court or you successfully challenged. So why was there any need for federal litigation as to those? Because after we successfully blocked them in state court and the court didn't approve the transfer, Rapid took the position that the agreement was still valid. They called a breach, went to arbitration. That's the whole arbitration scheme I was talking about, and then got an arbitration award telling us to do the same thing state court said you could not do. So this is a second stage. So that was the confusion and why I was doing a background is that there are two transfers here. None of those at the second stage settled or were successfully challenged? Well, we successfully challenged them. Remedies in Dempsey, for example. Remedies settled. Okay, so why did you need to pursue federal litigation? No, remedies settled once it got into federal. But we did successfully challenge these. It was in this case. In other words, we didn't challenge the arbitration awards before any of these in any other case but this one. I do agree, although I do think that the statute lends itself to a little broader interpretation than Judge Rosenthal and Rapid give it here. The court doesn't need to address that. If you take Judge Rosenthal's opinion, which Rapid has adopted and run with, that you have to do it following a transfer and challenge a specific transfer, we've done that here at least with respect to 10 annuitants. What about fees to seeking to enjoin future and unspecified transfers? I believe I can make an argument that the statute would cover that as well because it's broad and indemnity-like. No, Your Honor. I've got some cases cited in our brief, but I'm going to leave. I'm going to, for purposes of this appeal, ask the court to just apply Judge Rosenthal's opinion and that you have to challenge a specific transfer in order to be awarded fees. And in that case, I think we— And demand it for more litigation. I wish that wasn't the case, Your Honor, here, but she did shut the door on fees completely. And I attempted in my Rule 59e to just make this very distinct point about—I see my time is up, Your Honor. All right. Thank you. You're reserved time for rebuttal. Mr. Craddock. Good morning, Your Honors. May it please the Court, my name is John Craddock, and I'm here on behalf of Rapid Settlements Limited. Judge Rosenthal, in a painstaking manner, reviewed all the documents, reviewed all the evidence, and came up with her order. One of them was in her memorandum was 71 pages. Judge Rosenthal did not miss the boat on the fact that Symetra abandoned its claims for fees and that they were trying to recover fees in this case, in the federal litigation now, based on this global litigation and the practice of trying to prohibit rapid general practices. That's exactly what it is. The live pleadings in this case is Symetra's third amended complaint. And if Your Honors look at that, and it's in the record, the only annuitant listed and identified in Symetra's live pleading is Gross. That's the only one. And we'll talk about Gross in a moment because that particular case against Mr. Niemeyer in Indiana falls under the litigation exception. But if you also look at the live pleadings of Symetra, what they're talking about is the permanent injunction. We're going to stop Rapid from doing this and torture and interfere. There's a list. It's declaratory judgment relief and a permanent injunction. That's the core of their pleading. And bear in mind, Your Honors, Symetra did not move for recovery of fees in the federal litigation based on the declaratory judgment act. They tried to recover their fees solely now under the SSPA, both Washington and Texas. And no, the Texas SSPA, like the Washington SSPA, does not allow for unnamed future arbitrations as a basis for an obligor to recover attorney's fees. That's not even the argument that Judge Rosenthal adopted. She didn't say that arbitrations weren't outside the statute. She said they were illegal. And so to me, she was wrong in constructing this saying following a transfer does not cover the federal litigation for the purpose to the extent that it involves specific annuitants who had been involved in the arbitration proceedings. Your Honor, I agree with you, Justice. Okay. I agree with that. I agree with that point. But what I was referring to is to recover fees under the Texas SSPA requires following a transfer of a specific annuitant in which the factoring company did not comply with some portion of the statute, therefore the obligor is entitled to fees. Nowhere will you see in that statute or any case that I'm aware of that's ever construed that statute or any in the United States that says a future unnamed arbitration, you can recover attorney's fees. And that's what they're trying to do. Well, he says exactly the opposite. He says that they are trying to, and I agree that there are questions about segregation, but in the third iteration of their request for attorney's fees, they said they are only requesting with regard to specific transfers. Not for the global injunction, but to the extent that they had to involve these nine or ten transferees because they had to fight those cases in order to prove their basis for a permanent injunction and declaratory judgment. Right? So it can't be the whole of the fees, but it's certainly at least part of the fees. In the hearing in August concerning the fees, Symmetra's counsel, and this is in the record on page 9765, if the SSPA would not apply to unnamed future arbitrations, then I don't know another way we would be entitled to fees. ROA 9765. But isn't that when she also said, I mean, when she decided to let them go forward and state their other theory about these specific claims, she gave them a continuance, which you argued against. Yes, Your Honor. Right? To restate their fee application. Yes, Your Honor. And what was the basis for that? Because, what was the basis of my objection? No, not your objection. Sorry. What was the basis for her granting the continuance to let them reframe their fee app? I think that Judge Rosenthal was giving them every possible break, if you will, to justify their fees, and they still haven't done it to this day. But it was after that she enters her order preliminary in joining your enforcement of the arbitration agreements in some of the cases, the specified cases. No, she had already entered the preliminary injunction prior to this. 2007. Yes, Your Honor. I'm talking about, this is in 2012, that I'm talking about where counsel said that if we don't, if we can't apply the SSPA to unnamed future arbitrations, then I don't know how we're going to get our fees. Well, you can't under the SSPA, and they're not entitled to fees. He's abandoning that. So what about the Patterson, the Gross, and the Richardson? What about the fees that they successfully, that they incurred successfully challenging the arbitration agreements that you were seeking to enforce? Because it should have been raised in the state court. They know how to do that. They've done this. No, because in the state court, well, that's not what Judge Rosenthal said. Let me put it that way. Right. But they have. In Gross, they have . . . How is it relevant what they're doing in state court to their efforts to enjoin your enforcement of the arbitration agreement? Right. The two just don't connect. I mean, there might be . . . Because it has to do with . . . It might be the double liability . . . Because it has to do with . . . I'm sorry. Go ahead. I'm sorry. Because it has to do with a transfer, a structured settlement payment rights. It's in that case, in that state court. That state court is the place where it has unique opportunity to eyeball the witnesses, eyeball the lawyers, ask questions related to that transfer. Yes, but RAPID didn't let it end at that, and RAPID pursued these people into arbitration following a loss in state court. So RAPID didn't . . . could have made claims for attorney's fees in state court as the state court proceedings, but it didn't. Then the arbitration occurred. Then they went to federal court to avoid the arbitrations. Your Honor . . . Right? In part, you're correct. In part, you are correct. It's a very complex thing. Well, it is. That's sort of the nut, given the concession he's made, and I don't see why the fees wouldn't be appropriate. Because . . . Judge Rosenthal gave them, as I said, the opportunity to do everything. They've never complied with Rule 26, and the motion for summary judgment originally, where they were going to try this tortious interference claim for fees, then, for the first time, do they produce all of their attorney's fees. And all so we know what's going on. Never before that. And so what happens is, when they amend their motion for summary judgment in lieu of their first motion and abandon those claims, they add new fee statements to cover. And she . . . Judge Rosenthal had to sort through all of this. And she understood what was going on. And, yes, they failed to segregate their fees. And you can't just say it's time to remand, because remand is inappropriate here. She couldn't even break out percentages, which is required under Texas law. Thank you. Because they didn't even attempt to give a percentage breakout. And, as I said, they know how to give fees in state court. They've done it just in gross. They also did it in the Thompson case, which is cited in their brief and in our brief as well. In their final motion . . . Well, I don't think we have their final motion for attorney's fees in the record excerpts, do we? Yes, Your Honor. The final motion for attorney's fees, as opposed to the district court? Oh, in the excerpts? No, I'm sorry, Your Honor. I'm thinking in the record. No, I don't believe you do. But, I mean, you say they're not segregated. And they say we didn't have to segregate. We can remand it. And that was still asking for $800,000 or $900,000, right? But it's a new amount. What do you mean it's a new amount? Because it's not the same $900,000 they saw before. That was the $900,000 in state court. And now we're the $900,000 in federal court. Right, but it's not apples to apples. There are some different calculations and different invoices that supported that. Well, that's possible. But still, it's not segregated by claimant. No, Your Honor. And nor is it segregated by the amount of time that was spent for the tortious interference theory that they took up until this amended motion for summary judgment. Obviously, they spent a lot of time on that theory that they were pursuing initially. And now they've changed it. So there's several basics for rejecting Symetra's argument and affirming that portion of Judge Rosenthal's order. I would like to turn to the litigation exception to the American rule, which is back to Kenneth Gross. In this particular case, this is the Indiana litigation between Mr. Niemeyer and Mr. Gross. It was a real estate deal. Mr. Niemeyer was seeking to recover from Mr. Gross, got a judgment. In November of 2005, they enter into an agreed order for garnishment. And what they're going to garnish is a chunk of a future transfer payment from Symetra to Mr. Gross, future payment under the SSPA. So, in effect, this is a deal that didn't comply with the SSPA either because there was no showing of best interest. You have to get an IPA. Anyway, so that's just as an aside. So in November of 2005, Symetra agreed to this garnishment. During this time in Texas, Rapid's judgment as to the fees, it thought it was due, excuse me, fees, the payments that it had purchased from Mr. Gross, that order had been set aside. So Rapid challenged that order in the Court of Appeals in Texas. In November of 2006, the Court of Appeals granted Rapid's relief and said it was entitled to those payments and those payments should be assigned to it. It was at that time that Symetra, after having agreed to the garnishment between Mr. Niemeyer and Mr. Gross, it was at that time that Symetra decided to bring Rapid into the Indiana litigation. So Symetra found itself in a problem situation because instead of just simply intervening in the case, submitting the payments to the court as a true innocent stakeholder would, it decided to litigate. So our position is that because Symetra took those actions, it was the one that initiated litigation, not Rapid, against Symetra, then the DP Solutions case that Symetra relies on is inapplicable. In DP Solutions and the other cases that cite it, the tortious interferer, if you will, is the one that brought the prior litigation that required the plaintiff to defend itself or take action that cost it fees in another case. Well, that's not what happened here because Symetra is the one that actively initiated the litigation in Indiana. And bear in mind that it never in Indiana moved to stay that proceeding or abate that proceeding because it was running a dual-track case in federal court in Houston. It didn't do anything like that. So based on those facts, I believe that the court's, that Judge Rosenthal's opinion as to this litigation exception is incorrect. I also would like to talk about our issue on the right of first refusal, which is— Did you raise that in the district court? Did you raise that objection to the injunction in the district court? To the—what? The right of first refusal. Yes, we had. You had? Yes, we did. Because they say you waived it. I know they did. Okay. As part of a transfer agreement between a factoring company and a payee, the person or annuitant, it's common, and not just by a rapid, other companies like Settlement Funding, J.G. Wentworth, others have right of first refusals in there. And the idea, of course, from the factoring company's position is that in the event the annuitant wants to sell future payments, the factoring company at least has an opportunity to meet or beat the price that maybe another company would be offering the future payments that the annuitant may want to sell down the road, like any other right of first refusal. Judge Rosenthal has decided that under the SSPA, though, that the right of first refusal has to be much more detailed than simply saying there's a right of first refusal, that the disclosure statement and the order need to specify the payments that will be subject to the right of first refusal in the future and the amount of those payments. Well, there are two things about that. The first is it's impossible to know at the time that the annuitant sells its, let's say the annuitant has $100,000 of payments due him from Symmetra. Let's say that he wants to sell $50,000 in payments today, and so Rapid buys $50,000 worth of payments today, so there's $50,000 left. At the time that the court approves, assuming the court approves that application for transfer for the $50,000, there's no way to know if Mr. Jones, let's say, the annuitant, would ever want to sell the other $50,000. He may or he may not. He may have a hardship come along 30 years later or 10 years later or 5 years later in which he needs the money instantly. So it's impractical. In fact, it's impossible to do it. And from a public policy perspective, you have throughout the United States, not just in Texas, hundreds upon hundreds of orders that have been approved by courts transferring structured settlement payments from annuitants to factoring companies with the same kind of language for right of first refusal that's found in Rapid's transfer agreement and disclosure statement, which Judge Rosenthal found to be improper. So in other words, there's millions of dollars out there that have been transferred that are now all subject to be undone if this language, if Judge Rosenthal's order is carried out. For those reasons, we think it needs to be reversed. Thank you, Your Honors. Thank you, sir. Back to you, Mr. Hunter. Thank you, Your Honor. May it please the Court. First, with respect to the waiver of the right of first refusal issue, they conceded in their brief that they raised it for the first time on July 28, 2009, in a motion for clarification of the injunction against a person that is not a party not here on appeal, and that's NASD. I would also point out that the permanent injunction was in effect in, I believe, 07. It was appealed to this Court, and the permanent injunction was affirmed, according to their own statement of facts in the brief that they appealed it, and it was affirmed in 2009 on May 1st. So I believe even if they did raise it at some point in the district court, it was not raised prior to this Court affirming the permanent injunction in toto, and it was also not brought back up with respect to the permanent injunction in Symetra's favor after that, and it was not brought up in their Rule 59e motion either when they complained about the judgment that incorporated the permanent injunction. So I believe that it is also waived. I'd like to go back to the argument, the questioning by Judge Higginson of Mr. Craddick with respect to the state and federal court. This is an argument they've put forth since the beginning that's been rejected, and that is the state court is the primary unique place that has to deal with all these issues. That was rejected. This isn't a forum statute. This is a statute about getting costs and fees if the other side fails to comply with the act. So in that respect, they've made the argument numerous times that you can't do it in federal court. I don't think anyone disputes, based on what I've heard in the briefing, that if we would have come to federal court and sought one injunction for one annuitant and asked for no other relief such as Candy Richardson, total value $90,000 in payments, diversity is met between Symetra and RSL, we come to court, we get one injunction against Candy Richardson, we get our fees, specifically tied to one transfer. It was after the arbitration. So what we did was, in one federal case, we obtained a preliminary and permanent injunction as to Richardson, Patterson, Gross, Remedies, Foreman, Dean, Hargett, Dempsey, Ayers, and Walker, and Remedies later settled. We did it in one case. I don't think there's anything that would preclude us from doing it in federal court versus going to each state in which the parties reside and ask for an injunction either. You are applying under Texas law, and under Texas law, it is your obligation to segregate those fees for which you can claim in derogation of the American rule. So you didn't even attempt to do that. First of all, our reply in support of summary judgment, Mr. Lefkowitz argues that he did segregate his fees on 97-59 of the record on appeal, and then his fee affidavit is 73-26, and then his amended fee affidavit is 78-14. I've looked at those fee affidavits, and I will concede to the court that that does not segregate fees solely for the specific annuitants. It does not. It attempts to segregate them based on time for the injunction and the work, but I will say this. If the court didn't want to remand, there's enough evidence in the record because he did say exactly how much it cost to bring the preliminary injunction and permanent injunction of those annuitants to this court. There's a fee statement that says $189,000 and change is how much it cost us to defend that injunction here on remand, and we know what was at issue in this court. Gross. That was a specific annuitant that Mr. Craddick and Rapid attempted to compel arbitration and confirm an arbitration award in court, and we came all the way up here, and that's where the court issued its opinion, affirming Judge Rosenthal, and there's at least one fee statement that covers a group of fees that would certainly be segregated for one specific annuitant, and that's the appeal to this court. But going back to your opinion, in state court, you have to prove up all your fees with evidence prior to judgment. That's the rule in state court. I mean, there's no doubt that's the procedure. I've done it many times. You even have to get your appellate court fees in advance in the state court. You have to estimate them because the trial court loses plenary power to even award the actual amount of appellate fees. So there's no doubt had this been in state court, but even if we had gone up on appeal, if the court finds any evidence of recoverable fees on appeal, they reverse and remand for the correct amount of fees. They only reverse if the record shows that you're not entitled to any fees and therefore there's no need to remand. I don't want to remand. But after looking at the record, legally, once Judge Rosenthal says as a matter of law you get zero fees, even for the ones in which you challenge specific transfers by injunction and did that work, that's it. Case over. We get no fees. There's nothing to prove up, nothing to segregate. Our fee affidavits clearly show we incurred some fees with respect to the annuitants. It does not give her an exact number. There's no doubt about that. But it shows we recover fees, and the issue here is not how much fees we're entitled to. It is a discrete legal issue as to whether or not Judge Rosenthal on this one point, the final point of this long litigation, was correct or incorrect in holding that we get no fees because we also use this vehicle to challenge their business practices. I'll stand on my brief with respect to their cross issues and ask the court to affirm the judgment in all respects except for the issue and reverse and remand on fees and find that we are entitled to recover the fees expended directly challenging invalid transfers with respect to specific annuitants. Thank you, Your Honors. The 10 that you enumerated. Pardon? The 10 that you enumerated. Yes, Your Honor. Sir, thank both sides for